UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ROBERTO ROBRENO, EARON BRATHWAITE,          Case No. 17-CV-9361
and RICARDO BARCENAS, on behalf of
themselves, FLSA Collective Plaintiffs and the Class,

                              Plaintiffs,

              -against-

EATALY AMERICA INC., EATALY USA LLC,
EATALY NY LLC d/b/a EATALY NYC
FLATIRON, EATALY NY FIDI, LLC d/b/a
EATALY NYC DOWNTOWN, NICOLA
FARINETTI, ADAM SAPER and ALEX SAPER,

                              Defendants.

------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION**

ELLENOFF GROSSMAN & SCHOLE LLP
Amanda M. Fugazy
Paul P. Rooney
Stephania C. Sanon
1345 Avenue of the Americas, 11th Floor
New York, New York 10105
Telephone: (212) 370-1300
*Attorneys for Defendants*


Dated: April 13, 2018
      New York, New York

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

I.    Eataly's policies against time-shaving demonstrate that a collective is unjustified............. 1

II.   Plaintiffs' time-shaving allegations are insufficient to sustain a collective action.............. 2

   A.   Time-Shaving: Post-Shift Off-the-Clock Work ................................................... 2

   B.   Time-Shaving: Pre-Shift Off-the-Clock Work .................................................... 2

   C.   Time-Shaving: Cutting Meal Breaks .................................................................. 2

   D.   Time-Shaving: Alteration of Time-Records ........................................................ 2

III.  Plaintiffs' allegations with regard to non-tipped work cannot sustain a collective action. . 3

IV.  Any collective action should be limited to the job categories of the plaintiffs and to
      employees who worked for their supervisors. ............................................................. 3

V.   The collective action notice submitted by Plaintiffs is inappropriate. ................................. 3

SUMMARY OF FACTS ........................................................................................................... 3

   A.   Eataly Has Lawful Policies In Place To Prevent Time Shaving. ....................... 3

   B.   Plaintiffs' Declarations ...................................................................................... 5

      1.   Robreno ..................................................................................................... 5

      2.   Brathwaite ................................................................................................. 5

      3.   Barcenas .................................................................................................... 5

      4.   Ceras ......................................................................................................... 6

      5.   Vasquez ..................................................................................................... 6

      6.   Davis ......................................................................................................... 7

      7.   Ndiaye ....................................................................................................... 7

ARGUMENTS ........................................................................................................................ 7

I.    Plaintiffs' Motion for Conditional Certification of the Collective Should Be Denied. ....... 7

   A.   Legal Standard .................................................................................................. 7

   B.   The Law Requires a Minimum Level of Detail Showing Plaintiffs Were Subject To
        A Uniform Policy or Practice. ........................................................................... 8

   C.   Plaintiffs' Declarations Fail to Make a Sufficient Showing That Their Time-Shaving
        Claims Cause FLSA Violations Or Arise From A Common Practice. ............................ 8

1.   Plaintiffs' Time-Shaving Allegations Do Not Show Any FLSA Violations................ 8

2.   Plaintiffs' Allegations Do Not Show That Alleged Time-Shaving Resulted From A Common Policy or Practice. ....................................................................................... 9

    a.   Time Shaving: Post Shift Off-the-Clock Work ...................................... 10

    b.   Time Shaving: Meal Breaks.................................................................... 12

    c.   Time Shaving: Pre-Shift Off-the Clock Work ...................................... 15

    d.   Time Shaving: Alteration of Time Records ........................................... 15

D.   Plaintiffs Have Not Demonstrated a Common Policy that Tipped Employees Spend More than 20% of Their Time Performing Non-Tipped Work . ...................................... 18

II.   If The Court Grants Plaintiffs' Motion, The Collective Must Be Narrowed Because Plaintiffs Cannot Show That They Are Similarly Situated To The Proposed Collective .. 19

A.   Plaintiffs' Proposed Form of Notice Is Improper. ................................................. 24

B.   Plaintiffs' Proposed Notice Is Not Neutral And Must Be Modified. ............................... 24

C.   Plaintiffs' Request for Six Years of Records is Improper. .................................................. 25

D.   Plaintiffs' Request For Telephone Numbers, Social Security Numbers. ......................... 25

E.   Plaintiffs' Request for Equitable Tolling Should Be Denied. ........................................... 25

CONCLUSION.................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Schnipper Restaurants LLC*,
  2017 WL 6375793 (S.D.N.Y. Dec. 11, 2017) .................................................................... 23, 24

*Apolinar v. R.J. 49 Rest*., LLC,
  No. 15-cv-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016) ................................... 22

*Bai v. Zhuo*,
  2014 WL 7385119 (E.D.N.Y. Dec. 29, 2014) ............................................................... 11, 12

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  2005 WL 22533428 (S.D.N.Y. Nov. 6, 2003) .......................................................... 14

*Benavides v. Serenity Spa NY Inc*.,
  166 F. Supp. 3d 474 (S.D.N.Y. 2016) ...................................................................... 25

*Boutros v. JTC Painting & Decorating Corp.*,
  2013 WL 3110943 (S.D.N.Y. June 19, 2013)................................................................ 9, 11, 16

*Colon v. Major Perry Street Corp*,
  2013 WL 3328223 (S.D.N.Y. July 2, 2013) ............................................................. 22

*DeJesus v. HF Management Services, LLC*,
  726 F.3d 85 (2d Cir. 2013)........................................................................................... 13

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc*.,
  27 F. Supp. 3d 313 (E.D.N.Y. 2014)................................................................ 17, 19

*Feng v. Soy Sauce LLC*,
  2016 WL 1070813 (E.D.N.Y. Mar. 14, 2016)........................................................ 12, 20, 21

*Flores v. Osaka Health SPA, Inc*.,
  2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ........................................................... 19

*Hoffmann–La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) .......................................................................................... 23

*Jin Yun Zheng*, 2013
  WL 5132023 ................................................................................................. 16

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008)............................................................... 24

*Lin v. Benihana Nat'l Corp.*,
  755 F. Supp.2d 504 (2010)........................................................................... 9

*Lujan v. Cabana Mgmt., Inc.*,
  2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ................................................................ 24

*Lundy v. Catholic Health Sys. of Long Island*,
  711 F.3d 106 (2d Cir. 2013) ............................................................ 9, 11, 13, 14, 15

*Mark v. Gawker*,
  2014 WL 5557489 (S.D.N.Y.  Nov. 3, 2014) ........................................................ 25

*Mata v Footbride LLC*,
  2015 WL 3457294 ) .......................................................................................... 16

*Mazur v. Olek Lejbzon & Co.*,
  2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ........................................................ 24

*Morangelli v. Chemed Corp.*,
  275 F.R.D. 99 (E.D.N.Y. 2011) ........................................................................... 10

*Murray v. City of New York*,
  2017 WL 3531552 (S.D.N.Y. Aug. 16, 2017) ........................................................ 17

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ................................................................................. 8

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013) ...................................................................... 9, 13, 14

*Ramos v. PJJK Rest. Corp.*,
  2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) ........................................................ 23

*Reyes v. Nidaja, LLC*,
  2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) ....................................................... 8, 12

*Romero v. H.B. Auto Grp., Inc.*,
  2012 WL 1514810 ............................................................................................. 8

*Sanchez v JMP Ventures*,
  No. 13 CIV. 7264 KBF, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ................... 8, 9, 12, 19

*Singh v. Patel*,
  2013 WL 2190153 (E.D.N.Y. May 16, 2013) ........................................................ 15

*Tamay v. Mr. Kabob Rest. Inc.*,
  2016 U.S. Dist. LEXIS 5612 (S.D.N.Y. Jan. 15, 2016) ........................................... 23

*Uddin v. O'Brien Rest. Holding Co., LLC*,
    No. 16 Civ. 2098, Dkt. No. 67 (S.D.N.Y. Nov. 22, 2016) ........................................ 18

*Veres-Pop v. Sistina Rest.*,
    No. 13 CIV. 2360 KBF, 2013 WL 4082872 (S.D.N.Y. Aug. 8, 2013) ................................... 25

*Yap v. Mooncake Foods, Inc.*,
    146 F. Supp. 3d 552 (S.D.N.Y. 2015) ........................................................ 24

**STATUTES**

29 C.F.R. § 531.56(e) ........................................................................ 18

29 U.S.C. § 216(b) ............................................................................ 8

29 U.S.C. § 255(a) ........................................................................... 24

29 U.S.C. §§ 201–19 (2006) ................................................................... 9

N.Y. Lab. Law § 203-d ........................................................................ 25

U.S. DOL, *Field Operations Handbook* § 30d00(e) ............................................ 18

## PRELIMINARY STATEMENT

Defendants Eataly America Inc., Eataly USA LLC, Eataly NY, LLC, Eataly NY FIDI, LLC (together "Eataly"), Adam Saper and Alex Saper (Eataly, Adam Saper and Alex Saper, together, "Defendants"), submit this memorandum of law in opposition to the motion by named Plaintiffs Roberto Robreno ("Robreno"), Earon Brathwaite ("Brathwaite"), Ricardo Barcenas ("Barcenas") and opt-in Plaintiffs Maria Ceras ("Ceras"), Catalina Vasquez ("Vasquez"), Andre Davis ("Davis") and Ahmed Ndiaye ("Ndiaye") (together, "Plaintiffs") for conditional collective certification under the Fair Labor Standards Act ("FLSA").

Eataly pays all employees for all hours worked. This bedrock principle is reflected in various Eataly policies and training materials and is repeatedly emphasized to all Eataly employees at every level. Despite these lawful policies, which Plaintiffs themselves rely upon in making the instant motion, Plaintiffs now seek to conditionally certify a broad collective of "all non-exempt" employees at Eataly's two New York locations for unpaid wages under the FLSA, based upon various alleged "time-shaving" schemes involving specific managers. The Court should deny Plaintiffs' motion.

The Plaintiffs have presented no evidence of any company-wide policy or practice affecting them and other similarly situated employees.  Rather, Plaintiffs' support for their motion consists of conclusory allegations regarding isolated examples of supposedly unlawful actions that fly in the face of Eataly's undisputed policies against such actions. Plaintiffs' allegations fall far short of even the lenient standard for conditional certification of a collective action.

## I.   <u>Eataly's policies against time-shaving demonstrate that a collective is unjustified.</u>

Plaintiffs present evidence that Eataly has numerous policies to combat time shaving and urges employees to report any inaccuracies in their time sheets.  These undisputed facts point strongly against any finding of a company-wide policy.

II.   <u>**Plaintiffs' Time-Shaving allegations are insufficient to sustain a collective action**</u>

Plaintiffs allege four variations of time-shaving, none of which are accompanied by sufficient detail to sustain a collective action.

A.   <u>**Time-Shaving: Post-Shift Off-the-Clock Work**</u>

Four plaintiffs (Robreno, Brathwaite, Barcenas, and Ceras) allege post-shift off-the-clock work in such a vague and conclusory way that they fail to allege facts sufficient to show that Eataly did not pay them minimum wage or overtime. If they are unable to allege that they themselves were not paid minimum wage or overtime, their vague and conclusory allegations that other unidentified employees were underpaid are also insufficient. Each worked for different managers and each only vaguely asserts that other unidentified employees were subject to the same practice.

B.   <u>**Time-shaving: Pre-Shift Off-the-Clock Work**</u>

One Plaintiff, Davis, alleges that his manager did not allow him to clock-in until his scheduled shift time, but does not allege that he was forced to do work before his scheduled shift time. Davis does not allege that anyone else was subject to this practice. Moreover, this claim appears nowhere in the complaint, and, as such, is inappropriate for consideration on this motion.

C.   <u>**Time-Shaving: Cutting Meal Breaks**</u>

Three plaintiffs allege (in their affidavits but not their complaint) that they suffered time-shaving as a result of failure to provide them with meal breaks (Davis, Ndiaye, and Vasquez). As these claims appear nowhere in the complaint, they should not be considered on this motion. Regardless, the Second Circuit has held that such claims are not actionable.

D.   <u>**Time-Shaving: Alteration of Time-Records**</u>

Three Plaintiffs allege that their time records were altered, but these allegations are also insufficient. Robreno claims that his time records always reflected exact numbers of hours, i.e., 39 or 40. There is nothing unlawful about that unless Robreno actually worked a different number

of hours.  Cera says she spoke to a co-worker, "Marcel" who noticed hours missing from his paycheck, with no specifics.  Vasquez claims she regularly had her paycheck adjusted downward from 42 hours but fails to allege any specific week when this took place.  These allegations are insufficient to support a collective action.

### III.  Plaintiffs' allegations with regard to non-tipped work cannot sustain a collective action.

The allegations of Plaintiff Barcenas, who worked as a server at Eataly NYC Downtown for approximately two months, are insufficient to support a collective action premised on the collective spending more than 20 percent of its time on "non-tipped" work.

### IV.  Any collective action should be limited to the job categories of the plaintiffs and to employees who worked for their supervisors.

If the Court decides to grant a collective action, it should limit it to the following categories for a three-year period: a) porters who worked for the same supervisors as Robreno, Brathwaite, and Vazquez, and, b) dishwashers who worked for the same supervisors as Davis.  The collective should be limited to the same supervisors, because Plaintiffs have failed to make any factual showing that the alleged practices exist beyond the departments in which the Plaintiffs worked.

### V.  The collective action notice submitted by Plaintiffs is inappropriate.

In the event the Court approves a collective action, numerous changes will be required in the form of notice.

## SUMMARY OF FACTS

### A.  Eataly Has Lawful Policies In Place To Prevent Time Shaving.

Eataly maintains multiple protocols ensure that all time is accurately recorded and paid and any errors can be promptly corrected, including but not limited to, allowing employees to print receipts when they clock-out which reflect their precise daily hours so that they can raise any

discrepancies with their managers. Plaintiffs' moving papers, which contain nearly 50 pages worth of Eataly's policies, procedures and training materials, confirm this. Eataly has a policy which provides that all employees "*must* clock in and out for all shifts," and so informs all employees in the Employee Handbook ("Handbook") and training. *See* Dkt No. 55 Exh. H – Handbook, p. 7. Dkt. No. 55, Exh. G – Policies and Practices Training p. 31.

In addition to this policy, Eataly provides specific protocols for the scenarios raised by Plaintiffs' allegations.   Under "Timekeeping Guidelines" for hourly non-exempt employees, attached to Plaintiffs' motion, Eataly provides:

- **Record all hours worked. Do not work off the clock!** Dkt No.55, Exh. H-Handbook.

- If you are required to stay past the end of your scheduled shift, do not clock out until you leave the property. *Id.*

- It is your responsibility to review your paycheck for accuracy. If a check is incorrect….please notify your supervisor ASAP. Errors will be corrected on the following paycheck. Dkt. No. 55, Exh. G – Policies and Practices Training p. 31.

- It is your responsibility to clock in and out for all scheduled shifts, including breaks. Inform a manager immediately if you forget to clock in/out. *Id.* at p. 33.

- Please notify Human Resources if you are not receiving your breaks. *Id.*

- If you are uncomfortable discussing an issue with your manager, please contact your Human Resources Representative. A telephone number is provided for the Representative. Dkt No.55, Exh. H- Handbook, p. 8.

Under the responsibilities set forth for Managers, also attached to Plaintiffs' motion, Eataly says:

- Pay associates for all time worked, including overtime hours. *Id.* at p. 9.

- Ensure your team members take meal breaks that are uninterrupted and **at least 30 minutes long**. If a meal break is interrupted or is less than 30 minutes, a team member must be paid for the break… and the 30-minute meal break period must begin again. *Id.*

- **Do not automatically deduct the meal period from…time records.** *Id*. (*emphasis in original*)

### B. **Plaintiffs' Declarations**

Plaintiffs' Declarations provide the following evidence to support their motion.

### 1. **Robreno**

Robreno worked as a porter in Eataly's Flatiron store. Robreno alleges he had a "regular work schedule" which varied throughout the course of his employment, from 40 to 78 hours per week and that his managers, Agustin and Marcos, instructed him, at least three times per week to clock out at the end of his scheduled shift and continue working for an extra hour. Robreno Decl. ¶¶4, 6. Robreno also asserts that he "observed" other non-managerial employees at Eataly's Flatiron store continuing to work after clocking out at the end of their shifts. *Id.* at ¶6. He further alleges that throughout his employment, Agustin "adjusted" his time records to reflect at least five hours less than the hours he actually worked and that he and coworkers Ventura (last name not provided), Alberto Flores and Severiano Cruz, "knew" the work hours reflected in their wage statements were "adjusted" because they contained "exact numbers, like 39.00 or 40.00." *Id.* ¶¶ 7,8.

### 2. **Brathwaite**

Brathwaite worked as a porter in Eataly's Downtown store. He alleges he was "scheduled" to work about 42.5 hours per week and was directed by two managers, "Noel and Fernando," about three times per week, to clock out at the end of his shift and continue to work off the clock for about an hour. Brathwaite Decl., ¶¶ 4, 6. He further alleges that he and co-worker Naija Torres were instructed to "clock out" at the same time by "Noel or Fernando" and "keep working". *Id.* at ¶ 7.

### 3. **Barcenas**

Barcenas alleges a "regular work schedule" of 37.5 hours per week and that managers, "Conor" and "Eleonora," "regularly" instructed him to clock out and perform about an extra hour

of work. Barcenas Decl., ¶¶ 5, 6. Barcenas also alleges he and coworkers, Kelly Hernandez and Eloy Lopez, "performed side work after [their] shifts" and complained to each other that they were working for free." Barcenas Decl., ¶ 8.

### 4. Ceras

Ceras asserts that she worked as a line cook at Eataly's Flatiron store from August 2010 to April 2017. Ceras Decl., ¶ 1. Ceras alleges she "regularly worked" more than 40 hours, and that her weekly hours varied throughout her employment from 40 to 78 hours per week and that her time records were regularly adjusted to reflect 3 to 5 hours less than actual hours worked per week. *Id.* at ¶¶ 4, 6. She also alleges that based on her "observations and conversations," the managers at Eataly NYC (unnamed) "adjusted" the time records of other employees (unnamed). *Id.* at ¶ 7. Ceras further asserts that starting on or about January 2017, "Jackie" instructed her to clock out at the end of her shift and continue working for about an hour. *Id.* at ¶ 8. She also states she recalls speaking to co-worker Marcel (last name not provided) who relayed to her that hours were "missing" from his wage statements and his work hours were all "rounded…ending with .00 or .50". *Id.* at ¶ 9.

### 5. Vasquez

Vasquez worked as a porter at Eataly's Flatiron store. Vasquez alleges that she was "scheduled" to work 40 hours during her employment, which included a 45 minute break. Vasquez Decl., ¶ 4. She also asserts she was required to clock out for a 45 minute break and was instructed by her manager, Agustin, to "work through" her breaks about 3 days per week. *Id.* at ¶ 6. Vasquez also alleges that Agustin underreported her work hours to reflect "37 to 39" hours and that based on her "observations and conversations," managers (unnamed) adjusted time records of other

employees to reflect less hours worked. *Id.* at ¶ 8. She also stated that she remembers talking to co-workers about how their work hours and pay were "shorted". *Id*. at ¶ 9.

### 6.  Davis

Davis worked as a dishwasher at Eataly's Downtown location.  He alleges he was "scheduled to work" about 40 hours per week and was "required" to clock out for a 30 minute break. Davis Decl., ¶¶ 4, 6. He also alleges he was "directed" by a manager, "Arlene," to "work through" [his] lunch break".  *Id.* at ¶ 6. He further asserts that "the heavy workload" required him to start work about "30 minutes to one hour prior to [his] scheduled start time," and that Arlene did not allow him to clock in until his scheduled start time. *Id.* He also states that employees (unnamed) told him managers, "Chris" and "Lee," instructed them not to clock in until their scheduled start time and that he and employees "China" (last name not provided), "Crystal" (last name not provided) and "Dante" (last name not provided) frequently discussed off-the-clock work. *Id.* at ¶ 7.

### 7.  Ndiaye

Ndiaye worked as a line-cook for Eataly's Downtown location. He alleges he was "scheduled" to work about 52 hours per week with a meal break of 30 minutes. Ndiaye Decl. ¶ 3. He also alleges he was "unable" to take his scheduled 30-minute break because the restaurant was "too busy" and Defendants deducted 30 minutes, regardless of whether he took the meal break. *Id.* at ¶ 5.

### ARGUMENTS

**I.   Plaintiffs' Motion for Conditional Certification of the Collective Should Be Denied.**

**A.  Legal Standard**

The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under 29 U.S.C. §216(b). At the first step, (conditional

certification), the plaintiffs bear the burden of making a "modest factual showing" that the named initial plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Sanchez v JMP Ventures*, No. 13 CIV. 7264 KBF, 2014 WL 465542, *2 (S.D.N.Y. Jan. 27, 2014) (citing *Meyers v. Hertz Corp.,* 624 F.3d at 537 (2d Cir. 2010). At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Sanchez*, 2014 WL 465542, at *1.

### B.  The Law Requires a Minimum Level of Detail Showing Plaintiffs Were Subject To A Uniform Policy or Practice.

While the required factual showing may be "modest," "certification is not automatic." *Romero v. H.B. Auto Grp., Inc*., 2012 WL 1514810, at *10 (internal quotation and citation omitted). Plaintiffs' modest factual showing "must still be based on some substance" and "[a] plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice." *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015) (internal citations omitted). Declarations submitted in connection with motions for certification must allege facts showing such a nexus, not mere statements that others are "similarly situated." *Reyes*, 2015 WL 4622587, at *2. Plaintiffs cannot rely upon mere "unsupported assertions," or "conclusory allegations" to satisfy his/her burden of showing he/she is similarly situated to the proposed collective. *Sanchez*, 2014 WL 465542, at *1.

### C.  Plaintiffs' Declarations Fail to Make a Sufficient Showing That Their Time-Shaving Claims Cause FLSA Violations Or Arise From A Common Practice.

### 1.  Plaintiffs' Time-Shaving Allegations Do Not Show Any FLSA Violations.

"Time-shaving" is not, in and of itself, a cause of action under the FLSA. The FLSA requires payment of minimum wages and overtime wages only. 29 U.S.C. §§ 201−19 (2006). As

such, Plaintiffs must show that the time shaving resulted in a failure to pay minimum wage and/or overtime. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 201 (2d Cir. 2013). Plaintiffs cannot make this showing. All of the Plaintiffs were compensated above the current federal minimum wage of $7.25 per hour and the allegations regarding off-the-clock work are too vague to ascertain whether they are owed minimum wage for any hour up to 40 or overtime for any hours worked in excess of 40 in any given workweek. *See Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106 (2d Cir. 2013).

Although a district court need not evaluate the merits of a plaintiff's claim in order to determine whether similarly situated plaintiffs exist for purposes of conditional certification and court-authorized notice, plaintiffs' pleadings must be legally sufficient.  *Boutros v. JTC Painting & Decorating Corp.*, 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013).  Plaintiffs' allegations fail this fundamental test.

Plaintiffs must, at a minimum, demonstrate that they and the putative collective were subject to the *same practice* involving off-the-clock work. They cannot and, therefore, their motion should be denied. *See Lin v. Benihana Nat'l Corp.,* 755 F. Supp.2d 504 (2010) (To be "similarly situated," plaintiffs must sufficiently show that they and potential plaintiffs were victims of a common policy or plan); *Morangelli v. Chemed Corp*., 275 F.R.D. 99, 112 (E.D.N.Y. 2011)) (plaintiffs' argument that hours-shaving at various branches resulted from a national policy misstates their claim; "[w]hat plaintiffs complain of in this action are practices of time-shaving among branch offices").

### 2.  Plaintiffs' Allegations Do Not Show That Alleged Time-Shaving Resulted From A Common Policy or Practice.

Plaintiffs' allegations also fail to show a common policy or practice was the cause of the alleged "time-shaving."  For that additional reason, the Court should deny their motion.

Far from demonstrating a common or uniform practice, Plaintiffs instead shower the Court with a hodgepodge of the following time shaving allegations: 1) supervisors told them to clock off at the end of their shifts and continue working, 2) one person, Davis, started working before the start of his scheduled shift prior to clocking in because of his "heavy workload", 3) they were instructed to work during their scheduled meal breaks, or 4) their supervisors adjusted their time so that their total hours worked were underreported. All these allegations are punctuated by vague, non-specific and conclusory assertions concerning other employees which cannot warrant even an initial a collective certification. Dkt. Nos. 56-62.

### a. Time Shaving: Post Shift Off-the-Clock Work

Four Plaintiffs, Robreno, Brathwaite, Barcenas and Ceras, allege that they were instructed by specific managers to clock out at the end of their shifts and continue working. In light of Eataly's specific policies instructing non-exempt employees not to perform "off-the-clock" work and guidelines for managers, such a claim seems highly implausible. More importantly, Plaintiffs' declarations contain insufficient information to ascertain whether any minimum wage or overtime is owed to any of them, let alone the broad collective of "all non-exempt employees".

At the outset, the Court should completely discount Brathwaite's declaration. First, he alleges Eataly hired him in May 2016. Brathwaite Decl. ¶ 1. This is false. He was actually hired in July 2016. DiSanto Decl., ¶ 3(a). Second, given the importance the Plaintiffs have placed on the role of managers in their claims, Brathwaite's allegation that two managers, Fernando and Noel, directed him to perform off-the-clock work should be viewed with a high level of skepticism as Eataly has no record of any manager named Fernando. DiSanto Decl., ¶ 3(b); Brathwaite Decl. ¶ 6. While a facilities supervisor by the name of Noel Fernandez worked at Eataly, his dates of employment reveal only 1 month of overlap with Brathwaite's employment, leaving Brathwaite's

claim that his manager instructed him to perform off-the-clock work "about three times per week…throughout [his] employment" implausible. DiSanto Decl., ¶ 3(c). Third, the Court should give little weight to Brathwaite's assertions that he spoke to co-workers about this alleged time shaving since one of the co-workers he purportedly spoke to, Tanisha, was hired two months *after* his termination from employment. *See Bai v. Zhuo*, 2014 WL 7385119, at *1 (E.D.N.Y. Dec. 29, 2014) (denying conditional collective certification where the two affidavits plaintiff submitted in support of his motion were factually inaccurate as to several allegations and as such failed to even make the "modest showing" required under the law).

In the event the Court elects to consider Brathwaite's declaration along with those of Robreno, Barcenas and Ceras, they are still insufficient to establish any violation of law occurred. Plaintiffs' allegations regarding "regular" work schedules and the isolated instances in which they allegedly performed off the clock work are insufficient to set forth a claim for unpaid minimum wage or overtime, absent more information about the specific hours Plaintiffs and their co-workers worked in any given workweek and the wages they earned. *See Lundy*, 711 F.3d at 114 ("In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."); *Boutros*, 2013 WL 3110943, at *4 (denying conditional collective certification as to plaintiffs' overtime claims because although plaintiffs  alleged they "regularly" worked more than 40 hours a week but "rarely" paid overtime, the plaintiffs identified no specific week in which they worked more than 40 hours.).

In addition, Robreno's and Ceras' assertions that they "observed" other non-managerial employees perform off-the-clock work fail to identify these employees or describe the specifics of their observations, and thus are insufficient to extend their claim to the purported collective. *See*

*Reyes*, 2015 WL 4622587, *4-5 (denying conditional collective certification where plaintiff stated he "observed" other employees who were not paid overtime, but failed to identify the employees or indicate the circumstances of his observations); *Sanchez*, 2014 WL 465542, at *5.

### b.   Time Shaving: Meal Breaks

The declarations of Vasquez, Ndiaye and Davis, actually allege different and distinct practices from the time shaving practices raised in the Complaint and in the aforementioned declarations. These individuals allege that they were either instructed to work through scheduled lunch breaks or "unable" to take a lunch break. Vasquez Decl. ¶ 6, Ndiaye Decl. ¶ 5, Davis Decl. ¶ 6. As a preliminary matter, the Complaint makes no mention of such claims and, therefore, the Court should disregard them.[1]

The Court should also disregard Vasquez's declaration due to its unreliability.  Vasquez alleges that she worked for Eataly for about five years, from on or about January 2012 to July 2017. *See* Vasquez Decl., ¶ 1. This is false. Vasquez began working for Eataly in 2014. *See* DiSanto Decl., ¶ 3(d). Vasquez's inability to provide even the most basic of information—her dates of employment, should render her declaration insufficient for purposes of the instant motion. *See Bai v. Zhuo*, 2014 WL 7385119, at *1.

Nevertheless, in the event the Court decides to consider these claims, they involve the same sort of time shaving allegations that the Second Circuit held to be non-actionable in *Lundy* and its progeny. *See Lundy*, 711 F.3d at 114; *Nakahata v. New York-Presbyterian Healthcare System*, 723 F. 3d 192 (2d Cir. 2013), *DeJesus v. HF Management Services, LLC*, 726 F.3d 85 (2d Cir. 2013). In *Lundy*, the Second Circuit held a plaintiff's allegations that she "typically" missed her meal

---

[1] Plaintiffs' motion for conditional certification of the collective is not the proper vehicle for raising new claims and they should not be rewarded for circumventing longstanding procedural rules.  *See Feng v. Soy Sauce LLC*, 2016 WL 1070813, at *3 (E.D.N.Y. Mar. 14, 2016) (plaintiff cannot raise a new claim of improper recordkeeping via a motion for conditional certification where no such claim was included in the Complaint).

breaks or was "interrupted", were insufficient under the FLSA because she failed to allege a single workweek in which she worked at least 40 hours and also worked uncompensated time in excess of 40 hours. *Lundy*, 711 F.3d at 114.

The allegations of Vasquez, Ndiaye and Davis regarding "scheduled" breaks which were missed, even when coupled with their assertions about the work hours they were "scheduled" to work, are still insufficient to set forth a claim for unpaid minimum wage or overtime because they fail to allege the specific hours worked and wages earned in any given workweek. Vasquez Decl. ¶ 6, Ndiaye Decl. ¶ 5, Davis Decl. ¶ 6; *Lundy*, 711 F.3d at 114.  Indeed, two of the Plaintiffs, Vasquez and Davis fail to sufficiently allege that they *actually worked* through their breaks—all they allege is that they were "instructed" or "directed to do so".  Vasquez Decl. ¶ 6, Davis Decl. ¶ 6; *see also id.* As for Ndiaye, who makes no mention of a manager and only alleges he was "unable" to take a break, it is unclear whether Defendants were even aware of him working through any breaks, which only serves to exacerbate the uncertainty of any overtime or minimum wage claims. Ndiaye Decl. ¶ 5.

Leaving aside the vagueness of Plaintiffs' assertions with respect to whether they actually worked through any breaks and whether Eataly was aware of them working through breaks, these meal break allegations fall short of stating a minimum wage or overtime claim. First, as to minimum wage, it is highly unlikely that Davis and Ndiaye are owed minimum wage, as their hourly rate of $11 and $16, respectively, well exceeded the federal minimum wage of $7.25 per hour. Davis Decl. ¶ 5, Ndiaye Decl. ¶ 3. However, as to Vasquez, the Court is left to speculate about whether or not any minimum wage is owed for the 2014 year because her hourly rate in 2014 was $7.50 and she fails to allege the specific hours worked in any given week at that time. Vasquez, however, likely has no claim for minimum wage between 2015 and her termination in 2017 as her

hourly rate was $11.50, well above the federal minimum wage. *See Nakahata*, 723 F.3d at 201 (2d Cir. 2013) (The FLSA is unavailing where wages do not fall below the statutory minimum).

Plaintiffs' claims for overtime fail for the same reason. By Vasquez's own admission, her claim for overtime is unlikely since she only worked about 36 hours a week, factoring her breaks. Vasquez Decl. ¶ 4. Therefore, *assuming arguendo*, she worked through three lunch breaks of 45 minutes, this would not result in overtime wages owed. *See Lundy*, 711 F.3d at 114. Similarly, Davis, seems unlikely to have an overtime claim – according to his Declaration, he worked about 37.5 hours. Davis Decl. ¶ 4. As such, even if he worked through three 30-minute breaks, he would still not have reached a workweek which exceeded 40 hours. *Lundy*, 711 F.3d at 114. Ndiaye's allegation that he was "scheduled" to work about 52 hours per week, but was not paid for two to three 30-minute breaks is both implausible and nonsensical on its face—Ndiaye essentially alleges that Eataly was generally willing to pay for 12 hours of overtime weekly, but unwilling to pay for an additional 1 to 1.5 hours. Ndiaye Decl. ¶ 3. Nevertheless, without information about the hours actually worked in any given week, this information does not state a cause of action for overtime. *See Lundy*, 711 F.3d at 114.

Moreover, Plaintiffs' vague and anecdotal accounts of other employees who allegedly suffered from the same meal break interruptions are insufficient to warrant extending their claims to the purported collective. For example, Vasquez's account of a manager requesting that she and certain co-workers return to work in the midst of their "meal break," is insufficient to establish that she and the putative collective were subject to a common practice that resulted in unpaid overtime. Vasquez Decl. ¶ 7; *Barfield v. N.Y. City Health & Hosps. Corp.*, 2005 WL 22533428, *2 (S.D.N.Y. Nov. 6, 2003) (denying motion for conditional certification where plaintiff alleged nurses were not paid overtime based solely on "limited anecdotal hearsay"). Vasquez provides no

information regarding her coworkers' hours worked or the wages they earned, and as such, her allegations are insufficient to warrant extending her purported minimum wage and overtime claims to the putative collective. *See Id.*

### c.  Time Shaving: Pre-Shift Off-the Clock Work

Only one Plaintiff, Davis, alleges off the clock work performed prior to his shift. Importantly, he does not allege what practice actually required him to start early nor does he allege he actually worked prior to the shift, only that he had a "heavy work load", suggesting again that this was no widespread practice, but a situational aberration. Davis Decl. ¶ 6. While he also asserts that manager Arlene "did not allow me to clock in until my scheduled start time", there is nothing unlawful about this practice on its face, unless she also directed him to do work at that time, which Davis does not allege. *Id.* Taken together, these allegations also support the entirely plausible idea that Davis showed up to work and began working before his scheduled shift, without Eataly's knowledge. Nevertheless, even *assuming arguendo*, that his manager directed him to perform off the clock work prior to the start of his shift, without information about the particular hours he worked in any given week, this does not state a claim for overtime. *See Lundy*, 711 F.3d at 114.

### d.  Time Shaving: Alteration of Time Records

Robreno, Ceras and Vasquez's allegations regarding alteration of time records are facially lawful and insufficiently detailed, and as such fail to meet the minimal factual showing required for collective certification. *See Singh v. Patel*, 2013 WL 2190153, at *3 (E.D.N.Y. May 16, 2013) (plaintiffs' allegation that their paystubs did not accurately reflect the number of hours worked is not sufficient to state a plausible claim under the FLSA). The allegations by these Plaintiffs that they and co-workers noticed that the hours reflected in their paychecks were less than the number of hours they had actually worked and were in exact numbers like "39" or "40" or ended with

".00" or ".50" do not show that they and the putative collective were subject to a common practice or policy *that violated the law*. Robreno Decl. ¶ 8, Ceras Decl. ¶ 9 and Vasquez Decl. ¶ 8.

First, these allegations do not automatically translate into a violation of law or even suggest one occurred. One legitimate reason for a discrepancy between the hours an employee believes he worked and the hours stated in a wage statement is that the employee failed to adhere to Eataly policy requiring him/her to clock-in for each shift and break and to inform a manager of the clock-in error. *See* Dkt. No. 55, Exh. G - Policies and Practices Training.

Second, there is nothing illegal about wage statements which show exact hours worked like "39" or "40" hours or "00" or ".50", absent a showing that they are inaccurate. *See Singh v. Patel*, 2013 WL 2190153, at *3.  Because Robreno and Ceras fail to provide any facts concerning the hours they worked in any given week, including any hours above 40, these allegations are insufficient to state a claim for minimum wage and overtime. *See Boutros*, 2013 WL 3110943, at *3 (denying collective certification as to Plaintiffs' overtime claim because they failed to provide any reference to any particular week in which either plaintiff worked more than 40 hours.)

Vasquez's attempt to link herself to the putative class is likewise unpersuasive, as she only alleges that "based upon observations and conversations with [her] co-workers" she believes their work hours were adjusted to reflect less number of hours worked. Vasquez Decl. ¶8. Vasquez provides no information about these conversations with and observations of other co-workers about this particular scheme. *See Jin Yun Zheng*, 2013 WL 5132023, at *7 ("plaintiff has made 'no effort to detail the precise mechanisms by which she observed any other clerk being injured'…This failure is fatal to plaintiff's motion.").

Taken together, the aforementioned declarations fail to show a "common" or "uniform" practice to which the Plaintiffs were subject, but instead describe inconsistent practices subject to

the whims of individual supervisors across different employees.  *See Mata v Footbride LLC*, 2015 WL 3457294, *3 (Courts in this circuit require "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions").  Plaintiffs' submissions show that their supervisors who purportedly instructed them to perform off-the-clock work are the driving force behind the various time shaving claims.  This necessarily warrants an individualized assessment not susceptible to collective certification.  *See id*.  Indeed, the only way to determine whether an individual has a minimum wage or overtime claim here is through an individualized assessment of the person's work hours in any given week, hourly rate, specific instructions by supervisors and the extent to which such instructions, which violate company policies, were followed.

Plaintiffs' claims, which suffer from a lack of uniformity, mirror those in *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc*., 27 F. Supp. 3d 313, 320 (E.D.N.Y. 2014), which the Court described as "aris[ing] from a hodgepodge of procedures implemented in varying ways by different managers across numerous departments and locations." *Id.*  There, the Court rejected plaintiffs' argument that a collective action was appropriate due to various off-the-clock claims stemming from unpaid breaks because automatic meal deduction policies are not *per se* illegal. *Id.* at 320–21. The Court explained that, because plaintiffs were not subject to a uniform illegal compensation policy, they could not point to a common violation of law that would bind the purported collective. Plaintiffs here, similarly, have failed to show a common practice which binds them and the putative collective—in fact, not a single variation of the time shaving schemes alleged here even applies to all Plaintiffs. S*ee id.; see also Murray v. City of New York*, 2017 WL 3531552, at *5 (S.D.N.Y. Aug. 16, 2017) (denying conditional collective certification, where the seven

plaintiffs allege a variety of pre-shift and post-shift work and unpaid meal periods, because they failed to show a common policy in violation of the FLSA).

### D.  Plaintiffs Have Not Demonstrated a Common Policy that Tipped Employees Spend More than 20% of Their Time Performing Non-Tipped Work.

Barcenas is the only tipped employee in the current action. To the extent Plaintiffs seek certification of a tipped employee collective, such a request should be denied. The single declaration offered concerns a tenure with Eataly totaling two months, is full of vague and conclusory allegations that he was "required" to spend "half" his time on non-tipped work such as cleaning and polishing silverware and that "other tipped employees" performed "similar non-tipped activities."  Barcenas Decl. ¶ 11.

Federal regulations permit the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities) unless a substantial amount of time (in excess of 20 percent) is spent performing such work. *See* 29 C.F.R. § 531.56(e); U.S. DOL, *Field Operations Handbook* § 30d00(e). In order to qualify for conditional certification on a claim for non-tipped work, "[p]laintiffs must allege facts showing that the collective was subject to a regular policy requiring all members to spend more than 20% of their time performing non-tipped work." In *Uddin v. O'Brien Rest. Holding Co., LLC*, No. 16 Civ. 2098, Dkt. No. 67, at *9 (S.D.N.Y. Nov. 22, 2016), the Court denied collective certification with respect to plaintiffs' claim that tipped employees were required to spend more than 20% of their time performing non-tipped work because their declarations consisted only of "boilerplate, repetitive and conclusory statements" and made "no attempt to estimate the amount of time spent by other employees on non-tip producing work relative to that spent on tip-producing work", and thus failed to satisfy the modest factual burden. *Id.* at *7-8. Fugazy Decl., Exh. A.

Similar to *Uddin*, the Plaintiffs here cannot satisfy the modest factual showing to establish a common policy regarding tipped employees performing non-tipped work. *Id.* Plaintiffs provide only the following statements in Barcenas' declaration as proof that certification of all tipped employees is warranted: Barcenas and "[o]ther tipped employees employed by Defendants at Eataly marketplaces spent at least 2 hours or 20 percent of their workdays performing similar non-tipped activities." Barcenas Decl. ¶ 11. Like the *Uddin* plaintiffs, Barcenas makes no effort to describe with specificity the amount of time spent on non-tipped work in relation to his tipped work. He provides neither any specific conversations with, nor observations of, other employees. He also fails to identify the other tipped employees he allegedly observed performing significant non-tipped work. Such lack of detail is not surprising given Barcenas' tenure with Eataly was only two months. Plaintiffs, therefore, are not entitled to conditional certification with respect to the claim of non-tipped work performed by tipped employees since they do not "provide *any* detail as to a *single* such observation or conversation." *Sanchez*, 2014 WL 465542; *Flores v. Osaka Health SPA, Inc.*, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) (plaintiff's "broad conclusory allegations" about other employees failed to establish existence of common policy or practice).

**II.    If The Court Grants Plaintiffs' Motion, The Collective Must Be Narrowed Because Plaintiffs Cannot Show That They Are Similarly Situated To The Proposed Collective.**

In the event the Court decides to grant a collective action at all, it should be limited to those employees who worked for the same supervisors as Plaintiffs because that fact is the only fact that binds the Plaintiffs' claims together.

As shown above, Plaintiffs have failed to point to a common violation of law. Therefore, Plaintiffs can only sustain a collective if they show that they are similarly situated in terms of the facts surrounding their claims and those of other employees. Here, the only such facts are that

specific supervisors supposedly caused wage hour violations by violating Eataly policy. Accordingly, only to the extent those facts are common to a group of employees is a collective justified. *Desilva*, 27 F. Supp.3d at 323.

In so far as Plaintiffs seek to certify a broad collective of all nonexempt employees on the basis of factual similarities of the employees' experiences, Plaintiffs' submissions are as insufficient as their allegations are devoid of a company-wide unlawful policy or practice. Although Plaintiffs seek to conditionally certify a broad collective of "all non-exempt persons (including but not limited to, delivery persons, waiters, runners, bussers, porters, cooks, line-cooks, food preparers, dishwashers and bartenders,)" Plaintiffs, both named and opt-ins, consist only of three porters, a server employed for less than three months, two line cooks (one of whom was employed for less than three months) and a dishwasher employed for less than two months. *See* Robreno Decl. ¶ 1; Brathwaite Decl. ¶ 1; Vasquez Decl. ¶ 1; Barcenas Decl. ¶ 1; Ceras Decl. ¶ 1; Ndiaye Decl. ¶ 1; Davis Decl. ¶ 1.

Significantly, Plaintiffs have not demonstrated that they had similar job duties. Indeed, all the Plaintiffs, with the exception of Brathwaite, fail to even explain or provide a list of their own job duties or the job duties of potential collective plaintiffs. *See* Dkt Nos. 56-62. The declarations simply assert a job title, i.e., "porter," "line-cook." *See* Robreno Decl. ¶ 1; Ceras Decl. ¶ 1.

Aside from the same conclusory statement in each declaration, that "Based on my observations," "my non-managerial co-workers did work that was the same or similar to the work I did," or non-managerial employees were "rotated" or "interchangeable," there is no factual allegation connecting the Plaintiffs to any member of the broad collective they seek to represent. *See* Robreno Decl. ¶ 2; Brathwaite Decl. ¶ 2; Barcenas Decl. ¶ 3; Ceras Decl. ¶ 2; Vasquez Decl. ¶ 2; Davis Decl. ¶ 2. Plaintiffs fail to provide any detail as to which non-managerial employees

were rotated or to what extent they were "interchangeable." *See id; see also Feng*, 2015, WL 1061973, at *3 (denying conditional certification of a proposed broad collective and holding that "to meet their burden, plaintiffs were obligated to provide some probative information regarding similarly situated employees, such as their names, duties and their hours worked"). For example, Barcenas asserts in his declaration he was a non-managerial tipped employee and that "based upon [his] observations, other non-managerial tipped employees and I had similar job duties." Barcenas Decl. ¶ 3. However, Barcenas provides no detail as to his specific job duties or the job duties he allegedly shared with other tipped employees. *Id.*.; *see also Feng,* 2015, WL 1061973, at *3

Plaintiffs have actually demonstrated that they *are not* similarly situated. First, contrary to their assertions, their roles are not "interchangeable." Each of the named Plaintiffs cite different job titles. Robreno was actually a "Facilities Supervisor" and had supervisory duties over some of the non-exempt employees he seeks to now represent. *See* DiSanto Decl., ¶ 3(e).   Additionally, Plaintiffs, in their moving papers, submitted the following policy contained in Eataly's training materials with respect to internal job opportunities: "To be considered for another position or department within Eataly, you will need to complete the following: 1) complete at least 6 months of service with Eataly, 2) be in good standing with the company – no write-ups or disciplinary action, and, 3) consult with Human Resources to receive the internal job application." *See* Dkt. No. 55, Exh. G, p. 41.  These policies ultimately show that the roles are not "interchangeable."

Second, by their own admission, Plaintiffs' supervisors, compensation, work environments and schedules were different:

- Their supervisors, an integral part of their time shaving claims, were different:  Robreno alleges he was supervised by Agustin and Marcos, Brathwaite by Noel and Fernando (who, as previously discussed, does not exist), Barcenas by Conor and Elonora, Vasquez by

Agustin, Ceras by Jackie, and Davis by Chris and Lee. Ndiaye does not identify any manager who instructed him to perform work during his meal breaks. Dkt. Nos. 56-62.

- Compensation was different: ranging from $7.50 per hour for Barcenas (plus the tip credit) to $16 per hour for Robreno and Ndiaye. *Id.*

- Work locations were different: Plaintiffs' papers list nine restaurants, four cafes and thirteen food counters among the two locations. Dkt No. 55, Exh. B. Yet, Plaintiffs' declarations fail, with the exception of Ceras, to provide any details about which location they spent the bulk of their working time. Plaintiffs merely assert, quite unbelievably, they worked at "all" the restaurants, cafes and counters. *See* Dkt. No. 55, Exh. B.

These differences among the Plaintiffs and the putative collective prove that they are not similarly situated. Thus, the Court should not certify a collective action. *Colon v. Major Perry Street Corp*, 2013 WL 3328223, at* 7 (S.D.N.Y. July 2, 2013) (Denying collective certification as to both superintendents and handymen because they were not similarly situated and further explaining their jobs appear to involve markedly different payscales, different hours and tasks, different overtime policies and different compensation schemes.).

Accordingly, if this Court does certify a collective, it should reject the overly broad collective of "all non-exempt employees" proposed by Plaintiffs. Courts in this district routinely limit the collective where Plaintiffs, such as here, seek to certify an overly broad class. For example, in *Apolinar v. R.J. 49 Rest*., LLC, 2016 WL 2903278 (S.D.N.Y. May 18, 2016), this Court refused to permit plaintiffs, two delivery persons, to certify a collective of "all non-managerial employees" and limited to the location where the plaintiffs worked. After reviewing the plaintiffs' declarations, which provided their specific job duties, the name of the *same* manager who allegedly retained their tips and *common practices* specific to delivery personnel, this Court

held that these allegations sufficed to certify a collective of delivery persons at the location plaintiffs worked, but failed to show a *uniform unlawful policy or practice* applicable to all employees at all of defendants' locations. *Id.* at \*7.   Similarly here, Plaintiffs, should not be able to certify a collective of "all non-exempt" employees, especially since they have failed to show any commonality among them or the putative collective. *See id.*

Accordingly, in the event this Court grants Plaintiffs' motion, the collective should be limited to the following employees: a) porters who worked for the same supervisors as Robreno, Brathwaite, and Vazquez, and b) dishwashers who worked for the same supervisors as Davis.  The collective should be limited to the same supervisors, because Plaintiffs have failed to make even a modest factual showing that the alleged practices exist beyond the departments in which the plaintiffs worked. *See Alvarez v. Schnipper Restaurants LLC,* 2017 WL 6375793, *at* \*5  (S.D.N.Y. Dec. 11, 2017) (plaintiffs' allegations with respect to non-delivery workers were "sparse" and as such only certification of delivery workers was appropriate); *Ramos v. PJJK Rest. Corp.*, 2016 WL 1106373, at \*1 (S.D.N.Y. Mar. 10, 2016) (plaintiffs' proposed collective of a range of employees, including cashiers, hosts, hostesses, porters, bartenders, barbacks, waiters and runners, was overbroad; as such certification was limited to bussers, food preparers, delivery persons, dishwashers and cooks); *Tamay v. Mr. Kabob Rest. Inc.*, 2016 U.S. Dist. LEXIS 5612, at \*5-6 (S.D.N.Y. Jan. 15, 2016) (limiting conditional certification to deliverymen and kitchen staff, rather than "all non-managerial restaurant employees"); *Guo*, 2014 WL 5314822, at \*3–4 (S.D.N.Y. Oct. 16, 2014) (certifying collective of deliverymen only because plaintiff provided "vague, conclusory, and unsupported assertions" about other types of employees).

### A.  Plaintiffs' Proposed Form of Notice Is Improper.

Defendants maintain that Plaintiffs' motion to conditionally certify the collective should be denied and no notice should be issued. However, if this Court grants Plaintiffs motion, Defendants respectfully request that it modify Plaintiffs' proposed notice as set forth in more detail below and in Defendants' Proposed Notice and a redline version comparing it to Plaintiffs' Notice. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (the district court has discretion regarding the form and content of the notice.); Fugazy Decl., Exhs. B and C.

### B.  Plaintiffs' Proposed Notice Is Not Neutral And Must Be Modified.

The notice should provide a neutral statement of the claims and Defendants' answer, without any indication of the future outcome of the case. In this regard, Defendants request that the proposed notice be modified follows:

- The initial description of the case on the first page should delete reference A) to tipped employees' claims and B) to "(3) statutory penalties" as the New York Labor Law claims have not yet been certified. Fugazy Decl., Ex. B. *See Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356–57 (E.D.N.Y. 2008) (plaintiffs' proposed notice was overbroad; as such court modified it to omit the claims that could not be pursued on a collective basis).

- The Notice should include the following sentence in the section, "Your Legal Rights": "This Notice does not mean that you are entitled to any monetary recovery. Any such determination must still be made by the Court." *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, *6 (S.D.N.Y. Nov. 30, 2005) (upholding such language in proposed Notice). *Id.*

- The Notice should remove footnote 1 which explains the NYLL claims as those claims have not yet been certified. *See Laroque*, 557 F. Supp. 2d at 356–57. *Id.*

- The Notice should add Defendants' position on the merits. *Id.*

- The Notice should provide contact information for Defendants' counsel. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 567 (S.D.N.Y. 2015). *Id.*

- The "Consent to Sue" form should be re-named "Consent to Joinder." *Id.*

- The Proposed Notice should direct opt-in plaintiffs to send their Consent to Joinder form to the Clerk of the Court, not Plaintiffs' counsel. *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *13 (E.D.N.Y. Feb. 1, 2011). *Id.*

- Under the section, "The Lawyers Representing Plaintiffs", the last sentence, "If you want your own attorney to represent you in this lawsuit…you will be responsible for paying… attorney's fees and expenses," should be deleted.  Plaintiffs' counsel has no information concerning any other potential law firm's billing practices.  *Id.*

### C.  Plaintiffs' Request for Six Years of Records is Improper.

Plaintiffs have no basis to certify a collective of employees going back six years. The statute of limitations for FLSA claims is two years and three years if willfulness is proven. 29 U.S.C. § 255(a). Therefore, should the Court grant the motion, it should issue notice only to employees employed three years from the date of the Complaint. *See Alvarez*, 2017 WL 6375793, at *5.

### D.  Plaintiffs' Request For Telephone Numbers, Social Security Numbers.

The Court should reject Plaintiffs' request for social security numbers, compensation rates, email addresses and all known telephone numbers for all non-exempt employees, as overly intrusive. *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 489 (S.D.N.Y. 2016). Also, Plaintiffs fail to show that less intrusive information is insufficient.  *Id.*

If the Court grants Plaintiffs' motion, Plaintiffs should also be ordered to maintain the confidentiality of the information and to limit its use solely to sending the notice. *See Veres-Pop v. Sistina Rest.*, No. 13 CIV. 2360 KBF, 2013 WL 4082872, at *3 (S.D.N.Y. Aug. 8, 2013).

### E.  Plaintiffs' Request for Equitable Tolling Should Be Denied.

The Court should reject Plaintiffs' request for equitable tolling of the FLSA statute of limitations for all potential opt-in plaintiffs, as equitable tolling is appropriate "only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Mark v. Gawker*, 2014 WL 5557489, at *3 (S.D.N.Y.  Nov. 3, 2014).

## CONCLUSION

For the foregoing reasons the Court should deny Plaintiffs' motion for conditional certification of a collective action.

Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP

By:_____/S/_____
        Amanda M. Fugazy
        Stephania C. Sanon
1345 Avenue of the Americas, 11th Fl.
New York, New York 10105
Tel: (212) 370-1300

Dated: April 13, 2018              *Attorneys for Defendants*
        New York, New York